IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LARRY GREEN JR. (M-23778),** **Plaintiff,** v. **SEAN P. FURLOW, et al.,** **Defendants**. | Case No. 18-cv-05359 Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Plaintiff Larry Green Jr. brings suit against Defendants Sean P. Furlow and Clarence Egbe alleging violations of 42 U.S.C. § 1983. Before this Court is Defendants' motion for summary judgment [Dkt. 60] on the issue of exhaustion. For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

### 1. Local Rule 56.1 Issues

As a preliminary matter, Plaintiff's opposition to summary judgment suffers from several Local Rule 56.1 issues that the Court must address. The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015); *Judson Atkinson Candies, Inc. v. Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("[T]he Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1.").

First, Plaintiff failed to include a Local Rule 56.1 statement of facts in opposition to summary judgment. "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). Local Rule 56.1 "'requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a *separate* statement'" under Local Rule 56.1(b)(3)(C) "'of any additional facts that require the denial of summary judgment.'" *Hall v. Vill. of Flossmoor Police Dep't*, No. 11 C 5283, 2012 WL 6021659, at *8, n. 8 (N.D. Ill. Dec. 4, 2012) (quoting *Chicon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005)) (emphasis added). Instead of filing a separate statement of facts, however, Plaintiff included new factual material in his response memorandum. (Dkt. 65); *see Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("Simply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court."). Furthermore, most of the facts in Plaintiff's response memorandum are unsupported by record citations and/or constitute legal conclusions. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (A party's statement of facts does not comply with Rule 56.1 if "it fail[s] to adequately cite the record [or is] filled with irrelevant information, legal arguments, and conjecture.") The few facts with record citations are quotations from Plaintiff's deposition (attached as Exhibit 1), but this too is impermissible. Courts have repeatedly maintained that parties may not cite directly to the record in their response memorandum, requiring instead that they cite to the Rule 56.1 statement

of facts. *See Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 664 (N.D. Ill. 2015) (collecting cases). Defendants request that the Court strike Plaintiff's additional factual matter in its entirety and ignore Plaintiff Exhibit A. The Court declines to do so but will only consider factual material supported by the record.[1]

Finally, Plaintiff failed to respond to Defendants' Rule 56.1 Statement of Undisputed Facts. (Dkt. 61). Local Rule 56.1 provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted to be unless controverted by the statement of the opposing party." *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (citing L.R. 56.1). Thus, the party opposing summary judgment is required to respond to each paragraph submitted by the moving party, otherwise those facts will be deemed admitted. Here, Plaintiff has failed to file any response to Defendants' Rule 56.1 Statement. Accordingly, all of Defendants' factual matter in its Rule 56.1 Statement of Undisputed Facts is deemed admitted.

**2. Facts**

At all times pertinent to this suit, Plaintiff Green was an inmate at Stateville Correctional Center ("Stateville").[2] (Dkt. 61 at ¶3; Dkt. 68 at ¶12a). On July 30, 2016, Green was placed in segregation where he shared a cell with Darnell Anderson. (Dkt. 61 at ¶5). Green testified that on August 10 and 11, 2016, he informally requested to

---

[1] As it is the sole paragraph supported by record citations, the Court only relies on the facts set out in paragraph 12 of Plaintiff's response memorandum. (*See* Dkt. 65). Consequently, the Court also considers Defendant's responses to paragraph 12. (Dkt. 68).

[2] Green was transferred out of Stateville to another correctional facility on or around October 25, 2016. (Dkt. 65 Ex. 1 at 74).

prison staff that he be transferred away from Anderson due to fear for his safety. (Dkt. 65 Ex. 1 at 35; 43). Green was not transferred. On August 12, 2016, Anderson attacked Green. (Dkt. 61 at ¶5). Green brought the present suit under 42 U.S.C. § 1983 alleging deliberate indifference based on his placement in segregation and Defendants' failure to house him away from Anderson prior to the attack. (*Id.*) Defendants move for summary judgment on grounds that Green failed to exhaust the Illinois Department of Corrections ("IDOC) administrative remedies.

IDOC Grievance Procedure

IDOC has a grievance procedure in place for inmates to file complaints. (Dkt. 61 at ¶6); Ill. Admin. Code tit. 20, § 504.810 *et seq*. Inmates are advised of this process when they arrive at an IDOC facility. (*Id.* at ¶19). First, an inmate must attempt to resolve an issue informally with a counselor. (*Id.* at ¶8). If the issue remains unresolved, the inmate may file a written grievance at the institutional level within sixty (60) days of the provoking incident. (*Id.* at ¶9). Inmate grievances are reviewed by a facility Grievance Officer who investigates the complaint and generates a report within two (2) months containing her findings and, if applicable, a recommendation for relief. (*Id.* at ¶¶12-13); Ill. Admin. Code. tit. 20, § 504.830(e). The inmate's grievance and Grievance Officer's report are then sent to the Chief Administrative Office ("CAO") for review and signature. (Dkt. 61 at ¶14). Thereafter, the Grievance Officer's report and the CAO's final decision is sent to the inmate. (*Id.* at ¶15). As a final step, if the inmate disagrees with the resolution of his grievance, he may appeal in writing to the Administrative Review Board ("ARB") within thirty (30) days of the

CAO's decision. (*Id.* at ¶16); Ill. Admin. Code tit. 20 §504.850(a). The ARB conducts its own investigation and issues a final decision regarding the resolution of the grievance. (Dkt. 61. at ¶¶16-18).

Green's Grievances

Green testified that shortly after the attack, while still at Stateville, he prepared an institutional grievance and handed it to a correctional officer to submit on his behalf, who in turn handed it to Defendant Egbe. (Dkt. 68 at ¶12c). Green did not receive confirmation that his grievance was filed or a report from Stateville regarding the outcome of his grievance. (*Id.* at ¶12g; 12i; 12j).

On November 15, 2016, Green filed a formal grievance with the ARB regarding his placement in segregation and Anderson's attack (Dkt. 61 at ¶21). Green indicated that he had previously attempted to file a grievance at Stateville but had not heard back about it. (Dkt. 61-2 at 7). On December 12, 2016, after receiving Green's grievance, ARB Chairperson Sarah Johnson asked Stateville's Grievance Officer whether Green had filed an institutional grievance at Stateville regarding his segregation or Anderson's attack. (*Id.* at ¶22). The Grievance Officer advised that there were no grievances regarding the issue in Green's institutional grievance log. (*Id.*) The ARB subsequently denied the grievance as untimely. (*Id.*) On April 27, 2017, Green filed another grievance with the ARB regarding the same issue. (*Id.* at ¶23). The ARB once again denied it as untimely. (*Id.*)

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*.

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## ANALYSIS

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust all available administrative remedies prior to bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory— "a suit filed by a

prisoner before administrative remedies have been exhausted must be dismissed." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules" such that "a prisoner who does not properly take each step within the administrative process [ ] fail[s] to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). Inmates, however, are required to take these steps only to the extent they are available, and an administrative "remedy [may] become 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). It is the duty of the court, and not a jury, to determine whether an inmate has exhausted administrative remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir.2008).

Defendants argue that Green failed to exhaust administrative remedies by (1) failing to file a grievance at the institutional level and (2) filing his ARB grievances after the allotted sixty (60) day period.[3] Green maintains that although Stateville has no record of it, he wrote a grievance at Stateville shortly after being attacked and entrusted it to prison staff to file on his behalf. The Court believes

---

[3] In their reply memorandum, Defendants also fault Green for failing to file a formal grievance after his requests to be transferred were denied on August 10 and 11 of 2016. IDOC policy, however, gives an inmate sixty (60) days to submit a grievance. Green testified that the institutional grievance he submitted to the correctional officer shortly after the attack included complaints that his requests to be transferred had been ignored. Thus, Green properly grieved the denial of his transfer requests in his institutional grievance within the allotted time.

that Green is entitled to the benefit of the reasonable inference that he filed a grievance soon after his attack, but that prison officials lost or overlooked it. This inference is supported by Green's deposition testimony as well as his ARB grievances stating that Green is following up on his attempt to file a grievance from Stateville to which he did not receive a response. Although courts recognize the potential that prisoners may fraudulently claim they filed a grievance to overcome the exhaustion requirement, this Circuit has maintained that "the potential for fraud does not justify obligating truthful prisoners to prove that they mailed their complaints when the prison authorities do not provide them with means for verification." *Dole*, 438 F.3d at 813 (assessing exhaustion requirement with respect to identical IDOC policies).

Defendants contend that even if Green filed a timely institutional grievance, "[s]imply submitting a grievance and not receiving a response is insufficient to establish that the grievance process is unavailable." *Goldsmith v. Zolecki*, No. 12 C 3965, 2013 WL 5699302, at *6 (N.D. Ill. Oct. 18, 2013); *see also Hill v. Bond*, 2015 WL 1166053, at *3 (N.D. Ill. Mar. 11, 2015) ("[C]ourts in this district have held that inmates fail to exhaust if they do nothing—do not follow up, do not ask for instruction, or fail [to] pursue the issue in any way—after hearing no response to a grievance."). But this line of cases is distinguishable because after failing to receive a response to his initial grievance, Green followed up by sending two grievances to the ARB. *Compare Goldsmith*, 2013 WL 5699302, at *5 *and Hill*, 2015 WL 1166053, at *4 (concluding that inmates had not exhausted available administrative

remedies when they failed to follow up on unanswered grievances either by filing another grievance or pursuing an appeal) *with Brengettcy v. Horton*, 423 F.3d 674 (7th Cir. 2005) (concluding that inmate who filed *multiple* unanswered grievances exhausted all available administrative remedies even though he did not pursue an appeal).[4]

Regarding the timeliness of his ARB grievances, because the Court accepts that Green filed his initial grievance at the institutional level within the allotted sixty (60) day period, Green's subsequent ARB grievances are not untimely simply because they fall outside of this period. Green filed his first ARB grievance on November 15, 2016, roughly three months after his attack, which is consistent with the time period to file an appeal with the ARB after filing an institutional grievance.

The Court concludes that Green exhausted his administrative remedies. Defendants' motion for summary judgment is thus denied.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is denied.

---

[4] The *Brengettcy* court also based its decision on the fact that prison policy was silent as to what procedure inmates should follow if they do not receive a response to a grievance, such that the inmate's attempt to follow up by filing two subsequent grievances was sufficient to exhaust administrative remedies. 23 F.3d at 682. The Court notes that IDOC policy is silent in the same regard.

E N T E R:

Dated: May 26, 2020

MARY M. ROWLAND
United States District Judge